IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Great Northern Insurance Company, *et al.*,

                Plaintiffs

     v.

Brentlinger Enterprises, *et al.*,

                Defendants

:
:     Civil Action 2:11-cv-01153
:
:     Judge Marbley
:
:     Magistrate Judge Abel
:
:

# ORDER

This matter is before the Magistrate Judge on defendants BMW of North America LLC ("BMW NA") and Bayerische Motoren Werke AG ("BMW AG")'s December 17, 2013 motion to strike and exclude the opinions of plaintiff's untimely and improper rebuttal expert, Dr. Michael A. Steele (doc. 45) and their January 16, 2014 motion to exclude for spoliation (doc. 49).

As a preliminary matter, plaintiffs' January 17, 2014 unopposed motion for leave of court to file a sur-reply (doc. 50) and March 26, 2014 unopposed motion for leave to a supplemental sur-reply (doc. 62) are GRANTED.

## I.    Background

On May 30, 2007, Jean Patrick leased a new BMW 328xi. On March 16, 2010, Ms. Patrick parked the vehicle in the garage attached to her home. Sometime thereafter, a

1

fire started in the garage causing substantial destruction to the vehicle and residence. This case is a subrogation action brought by Ms. Patrick's insurer in an attempt to recoup the amounts paid to the Patricks as a result of the fire.

On March 17, 2010, plaintiff retained S-E-A Ltd. ("SEA") to investigate the fire. On April 5, 2010, after a preliminary investigation, the vehicle was transported by SEA to its facility for preservation as evidence, where it has remained in SEA's sole possession.

On May 5, 2010, the parties to this matter conducted a joint inspection of the vehicle. During the inspection, under engine compartment covers were removed to facilitate examination. Material removed from engine compartment was bagged and marked as evidence by SEA personnel. Under vehicle body covers running the length of the vehicle were not removed at this time.

On August 2, 2013, the Court ordered plaintiffs to make their expert disclosures by September 30, 2013. Defendants were ordered to make their responsive expert disclosures by October 30, 2013.

On September 27, 2013, plaintiff produced an expert report prepared by SEA. The primary focus of SEA was to identify the ignition source for the fire.  Plaintiff claims that the natural aerodynamic properties of the vehicle's design allow for the collection road debris in the engine compartment near the exhaust components during normal vehicle operation. Plaintiffs maintains that all BMW 328xi vehicles are unreasonably dangerous because of the risk that accumulated debris could catch fire.

2

According to the SEA report, the cause of the fire was the accumulation of combustible materials on the area of a heat shield or cross member positioned under the exhaust piping on the right side of the engine compartment. The report further stated that there was no evidence of rodent activity and that the foliage was not purposefully accumulated by a rodent.

In light of these opinions, defendants requested access to the vehicle, and an inspection was scheduled for November 1, 2013. Plaintiffs agreed to allow defendants to produce their expert reports on November 8, 2013.

On November 1, 2013, the vehicle was inspected by individuals on behalf of defendants at the SEA facility and pursuant to the terms of a previously agreed-to protocol. The inspection was monitored by SEA personnel. During the inspection, SEA personnel lifted the vehicle with a forklift to allow under-vehicle inspection. The forklift forks fractured an under vehicle body cover that had not been previously removed. When the cover fractured, the remains of a rodent fell out, which consisted of some hair and bones.

Dr. Gates, defendants' expert, examined the material collected at the May 5, 2010 inspection and the rodent remains discovered at the November 1, 2013 inspection. Dr. Gates discovered a bi-colored, mammal hair in the debris collected on May 5, 2010. The bones appeared to be the partial remains of a squirrel. The hair appeared to be bi-colored. Dr. Gates opined that the remains appeared to be directly related to the mammalian hair collected on May 5, 2010. He concluded that SEA's conclusion that

rodent activity was not a factor in the case of debris accumulation was incorrect. Defendants' liability experts prepared reports that were submitted to plaintiffs' counsel on November 8, 2013.

On December 16, 2013, defendants received plaintiffs' rebuttal expert testimony disclosure, but no report was attached to the expert disclosure. Plaintiffs offer the testimony of Dr. Michael A. Steele, who has a Ph.D. in biology, to rebut the findings and opinions of Dr. Gates.

**II.      Motion to Strike Dr. Michael A. Steele as a Rebuttal Expert**

**A.      Defendants**

Defendants maintain that the Court's August 2, 2013 Order provided a deadline of September 30, 2013 for plaintiffs' experts and that plaintiffs were obligated to disclose any experts it intended to use by that date. Rule 26(a)(2)(B) also requires such disclosures be accompanied by written reports. Rebuttal experts are those experts who offer testimony if the evidence is intended solely to contradict or rebut evidence on the same subject matter identified by another party under Rule 26(a)(2)(B) or (C).

Defendants argue that the existence of rodent activity was not a subject matter first identified in the conclusions of the BMW experts. Rather, the existence of rodent activity was identified in the SEA report. Experts retained and proffered by BMW evaluated the evidence and formed opinions in light of the opinions put forth by plaintiff's experts. Defendants point to the fact that SEA has been involved in this case since the day after the fire, and it has maintained sole possession of the vehicle since

April 2010. SEA ignored the physical evidence in the case and proffered conclusions without conducting a full and complete investigation. Defendants contend that plaintiff should not be permitted to offer new expert opinions evaluating and analyzing evidence that they initially chose to ignore.

Defendant further argues that plaintiff failed to produce the expert report as required by Rule 26(a)(2)(B), and this Court may exclude the proposed expert for failing to disclose it. Plaintiff's failure to produce the required report has prevented defendant from obtaining rebuttal testimony. Defendants also maintain that plaintiff's disclosure was untimely. Plaintiff had thirty days to produce any rebuttal expert disclosures and reports. Plaintiff identified Dr. Steele on December 16, 2013, well outside the 30-day time for doing so, and the disclosure was not accompanied by Dr. Steele's report.

Defendants argue that the untimely nature of plaintiffs' expert disclosure is neither substantially justified nor harmless. Plaintiffs, by and through SEA, have maintained sole possession of the vehicle since shortly after the fire. The squirrel remains at issue were not identified until the November 1, 2013 inspection. Because the inspection was not scheduled until November 1, 2013, plaintiff agreed to allow defendants to provide the reports of its liability experts on November 8, 2013. Defendants worked diligently to meet the agreed upon deadline. Although plaintiff had until December 9, 2013 in which to disclose the identity of any rebuttal expert and to provide the mandatory report, plaintiff did not identify Dr. Steele until December 16 and failed to provide a report at that time. Dr. Steele's report was not provided until

5

January 2, 2014, when it was attached to plaintiff's response to defendant's motion to exclude and strike plaintiff's rebuttal expert, fifty-five days after the defendants' expert disclosures and reports were provided.

Defendants further argue that plaintiffs failed to even mention the potential of disclosing a rebuttal expert until defendants had incurred substantial expense preparing for and undertaking an unsuccessful mediation. Defendants maintain that they were denied to opportunity to obtain appropriate rebuttal testimony.

Defendants also argue that several of Dr. Steele's opinions are not responsive to Dr. Gates's opinions. For instance Dr. Steele states that Dr. Gates opined that the material ignited by the exhaust components of the vehicle were likely deposited adjacent to the exhaust system by the fox squirrel. Defendants argue that Dr. Gates' reports do not contain the opinion attributed to him by Dr. Steele. As a result, defendants maintain that conclusions premised on this inaccurate assertion must be excluded. Defendants further maintain that Dr. Gates never asserted that the area surrounding SEA's facilities would be devoid of squirrel activity, nor did he identify any mud and roots associated with the bones of the fox squirrel. Defendants maintain no such mud or roots exist, and Dr. Steele's conclusions with respect to these assertions should be excluded.

### B.    Plaintiffs

According to plaintiffs, Dr. Steele will provide testimony and opinions on the same subject matters identified by BMW's expert, Dr. Gates, i.e., whether the squirrel

6

remains found on November 1, 2013 establish that a squirrel was present in the BMW prior to the fire of March 16, 2010. Plaintiffs maintain that their position remains that the evidence examined by SEA and the BMW experts in 2010 showed no evidence of any nesting created by rodents in the area of the car where the fire began.

Rebuttal evidence is that which solely rebuts evidence on a subject matter identified in the conclusions offered by another party's expert. Plaintiff maintains that the testimony of Dr. Steele is classic rebuttal testimony in that it is intended to rebut Dr. Gates's opinion that the squirrel remains found on November 1, 2013 are indicative of nest building activities occurring at the time of the fire in the area of the vehicle's exhaust system and which caused the fire in the vehicle. Dr. Steele's testimony is not intended to supplement, enhance or change the opinions of the SEA experts. Instead, Dr. Steele responds to Dr. Gates's report as follows:

- Whether the fox squirrel remains were found in a position in the vehicle which would be a path of refuge that began in the vehicle while the fox squirrel was also in the vehicle;

- whether a fox squirrel would likely build a nest next to a heated exhaust system capable of generating temperatures in to 600° to 700° range;

- whether the size of a fox squirrel would permit a fox squirrel access to the condensed area within the vehicle where all experts agree the fire originated and where the foliage was located;

- whether the outdoor storage of the burnt vehicle was stored after inspection would explain the presence of fox squirrel remains discovered in November 2013;

- whether a fox squirrel was more than likely than not to enter a garage of an occupied home and build a nest in a vehicle was operated on a regular basis; and,

- whether a fox squirrel would remain in the car while it was on fire and while the vehicle was stopped permitting the squirrel to escape through the same openings from which it entered.

Plaintiffs maintain that these areas of testimony directly rebut the opinions and conclusions of Dr. Gates.

Plaintiffs argue that defendants are not prejudiced by the rebuttal testimony of Dr. Steele and that the late disclosure was harmless. Defendant produced their expert report on November 8, 2013, and plaintiffs identified Dr. Steele just eights days after the applicable deadline. After plaintiffs extended a courtesy to the defendants for a seven-day extension, defendants argue that eight days is too long. Plaintiffs contend that defendants can show no actual prejudice. Defendants can depose Dr. Steele and have Dr. Gates respond to Dr. Steele's opinions and conclusions when he provides his own testimony. If defendants wishes to rebut the positions advanced by Dr. Steele, the Court may permit defendants to issue a sur-rebuttal report in response to Dr. Steele's report or deposition.

## C.     Discussion

Rule 37(c)(1) of the Federal Rules of Civil Procedure provides that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) . . ., the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Rule 26(a)(2)(D)(ii) requires a party to makes it expert disclosures within 30 days after the other party's disclosure "if the evidence is intended solely to contradict or rebut evidence on the same subject matter identified by another party under Rule 26(a)(2)(B) or (C). "The sanction of exclusion is automatic and mandatory unless the sanctioned party can show that its violation of Rule 26(a) was either justified or harmless." *Salgado v. General Motors Corp.*, 325 F.3d 735, 742 (7th Cir. 1998). The burden lies with the potentially sanctioned party to prove harmlessness. *Roberts ex rel. Johnson v. Galen of Virginia, Inc.*, 325 F.3d 776 (6th Cir. 2003).

Plaintiffs have not provided any explanation for the Court to determine whether their untimely disclosure was substantially justified. Rather, plaintiffs maintain that their untimely disclosure was harmless. In their March 26, 2014 motion to supplement their reply, plaintiffs noted that the parties's joint motion to extend the deadline for completing expert depositions until April 30, 2014 was granted. BMW deposed all five of the plaintiff's liability experts, including Dr. Steele prior to producing their own experts for deposition. As a result, plaintiffs contend that their belated disclosure was harmless and BMW have not been prejudiced.  Because plaintiffs' untimely disclosure

9

was harmless, defendants BMW's December 17, 2013 motion to strike and exclude the opinions of plaintiff's untimely and improper rebuttal expert, Dr. Michael A. Steele (doc. 45) is DENIED.

### III.     Motion to Exclude for Spoliation

#### A.     Defendants

On March 17, 2010, the day after the fire, plaintiffs retained SEA to initiate an investigation of the fire. On April 5, 2010, after a preliminary inspection, the vehicle was transported by SEA to its facility for further evaluation and preservation. Since April 5, 2010, the vehicle has remained in SEA's sole possession.

As early as May 5, 2010, when organic debris was found in the engine compartment, SEA was investigating how the debris entered the engine compartment. According to SEA Project Engineer, Nicholas E. Biery, Ph.D., P.E., the foliage was examined and found to contain no evidence of rodent activity. Dr. Biery noted that no rodent hairs, tooth marks, bones or droppings were observed. BMW argues that plaintiff clearly understood the importance of evidence rodent activity in the vehicle.

Despite having a large warehouse at its disposal, SEA decided to store the vehicle outdoors. SEA's storage decisions took place prior to defendants being in a position to understand plaintiff's allegations. Even if defendants had inspected the vehicle on the same day that this case was initiated and found signs of rodent activity, it still would have been too late to prove those signs were present at the time of the fire because of the negligent action of storing the vehicle outdoors.

Following the November 1, 2013 inspection, Dr. Gates examined the debris collected during the May 5, 2010 inspection and the rodent remains discovered in November 2013. According to Dr. Gates, the remains appeared to be directly related to a mammalian hair collected in May 2010. In response to Dr. Gates' report, Dr. Steele concluded that it was more likely than not that the rodent whose remains are at issue colonized the vehicle while it was being preserved by SEA. If Dr. Steele's opinions are assumed to be correct, then plaintiff has admitted that it failed to preserve central evidence that it allowed evidence to become contaminated in a fashion that is detrimental to the case.

Defendant argues that plaintiffs should be sanctioned for their failure to preserve evidence over which they had control. Defendants maintain that the evidence was destroyed with a culpable state of mind and that the destroyed evidence was relevant to their defense. Defendants maintain that even negligent conduct may warrant spoliation sanctions. Plaintiffs understood the potential for litigation involving the vehicle within a short time after the fire. Plaintiffs immediately retained subrogation attorneys who retained engineers to take possession of and evaluate the vehicle. There is no dispute that the vehicle is the most important piece of evidence in the case and plaintiffs understood this as early as March 2010. Plaintiffs also understood that the presence of rodent activity in the vehicle was a potential defense available to defendants. As a result, SEA set out to disprove the existence of rodent activity in the vehicle. Despite

this knowledge, plaintiff chose to store the vehicle, unwrapped and unprotected, outdoors for several months during the summer.

Defendants seek to preclude plaintiffs' expert, Dr. Steele, from offering opinions with regard to whether the rodent remains were or were not likely present in the vehicle at the time of the fire. BMW argues that Dr. Steele's argument is only available to plaintiffs as a direct result of spoliation of evidence and that plaintiffs should not be permitted to use their malfeasance to their own benefit.

BMW further argues that spoliation is the significant alteration or evidence or failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation. Here, plaintiffs are arguing that significant alteration of evidence took place while the evidence was in their possession. BMW agrees with plaintiffs' assertion that this is not the typical case of spoliation because the significant alteration of evidence is being utilized by plaintiffs in an attempt to discredit defendants' evidentiary finding.

### B.     Plaintiffs

Plaintiffs argue that although BMW claims that they spoiled evidence, the physical evidence upon which BMW relies was present when BMW's experts inspected the vehicle on November 1, 2013. Plaintiffs maintain that there is nothing in the record that suggests that plaintiffs, either negligently or knowingly, destroyed any evidence or that any evidence relevant to BMW's defense was previously present in the vehicle but

later destroyed. Plaintiffs argue that the specific relief requested by BMW does not flow from or is in anyway related to its claims of spoliation of evidence.

After plaintiffs noted BMW of the fire, BMW assigned its engineers and independent fire experts to inspect the vehicle on April 5, 2010. The inspection occurred at the scene of the fire. Following that inspection, the vehicle was moved to the SEA facility. It was inspected on May 5, 2010[1] pursuant to a protocol developed by the SEA and approved by BMW. After that time, BMW and its experts inspected, evaluated, photographed and removed debris and other components from the vehicle. At no time during that 2010 inspection did any consultant observe any evidence that appeared related to rodent activity.

Plaintiffs maintain that it was not until November 2013 that the evidence relied upon by Dr. Gates was discovered. BMW argues that plaintiffs somehow intended to destroy evidence which none of the parties knew existed until November 2013. Plaintiffs argue that BMW is asking this Court to conclude, without any supporting evidence, that in 2010 plaintiffs anticipated BMW's "squirrel defense" and purposefully stored the vehicle outside so a new squirrel could gain access to the vehicle and allow plaintiffs to argue that the squirrel entered the vehicle after the fire to rebut BMW's position. Although BMW inspectors investigated the vehicle twice in 2010, BMW never

---

[1]Plaintiffs' motion states it was inspected on May 5, 2013, but other references to the May inspection indicate that it occurred in 2010.

directed, requested, or insisted that the vehicle be preserved in any special manner for further inspections.

Plaintiffs argue that a request for sanctions based upon an allegation of intentional spoliation of evidence must be based on more than speculation. Plaintiffs further argue that no spoliation of evidence occurred and that no sanctions are warranted. Plaintiffs also note that BMW's motion is not supported by any affidavit, deposition testimony or any other evidence that suggests that plaintiffs destroyed evidence or acted with a culpable state of mind. Plaintiffs further maintain that defendants have not been prejudiced with respect to this matter because it has retained a squirrel expert and an insect expert to offer opinions related to the alleged rodent activity and the time frame for this alleged activity.

## C. Discussion

This Court possesses inherent authority to sanction bad faith conduct without regard to whether such conduct could be sanctioned under other applicable rules or statutes. *See First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 513 (6th Cir. 2002). Determination of the correct sanction for discovery misconduct is left to the broad discretion of the trial court. *National Hockey League v. Metropolitan Hockey Club*, 427 U.S. 639, 642 (1976). Courts must consider the state of mind of the party who destroys evidence when determining whether the imposition of sanctions is appropriate. Courts evaluate conduct on a "continuum of fault," ranging "from innocence through the degrees of negligence to intentionality." *Adkins v. Wolever*, 554

F.3d 650, 652 (6th Cir. 2009)(quoting *Welsh v. United States*, 844 F.2d 1239, 1246 (6th Cir. 1988)). Absent exceptional circumstances, courts generally do not dismiss an action or give an adverse inference instruction without consideration of whether the party acted in bad faith.

The party seeking a spoliation instruction must demonstrate that it was prejudiced by the loss of the information. There must be some showing of a nexus between the missing information and the issue on which the instruction is requested. *Consolidated Aluminum Corp. v. Alcoa, Inc.* 244 F.R.D. 335, 346 (M.D. La. 2006). Some evidence must be presented corroborating the assumption that the missing evidence would have been favorable to the plaintiff's case. *Id.* at note 24 (citing *Hamre v. Mizra*, No. 02Civ.9088, 2005 WL 1083978 (S.D.N.Y. May 9, 2005).

Here both parties had access to the vehicle just seven weeks after the fire. Their experts conducted a joint inspection, and defendants' experts accessed those areas of the vehicle they believed relevant to an inquiry into the source and origin of the fire. Nothing would have prevented them from then accessing the areas accidentally opened up three years later. It would seem unfair to hold plaintiff solely accountable for not making an examination on or before May 5, 2010 that defendants' experts could have made then had they so chosen. As it was, both sides completed their inspections of the vehicle in early may 2010, and there was no reason to believe that when the vehicle was stored that either side would need to later open up other under vehicle compartment areas.

15

In any event, it appears that leaving the vehicle vulnerable to squirrel activity could have disadvantaged plaintiffs more than defendants. It will be for the jury to evaluate the experts' opinion concerning the time frame of the squirrel activity. In any event, plaintiffs appear to have created a situation that makes them vulnerable to defendants' "squirrel defense." Without some evidence corroborating defendant's assumption that potential alteration to the vehicle would have been favorable to the plaintiff's case, sanctions are not warranted. If, as plaintiffs suggest, the vehicle contained no evidence of rodent activity in 2010, then allowing the introduction of squirrels into the vehicle creating evidence to counter plaintiff's assertion regarding the lack of rodent activity is more damaging to plaintiff's case.

Defendant BMW's  January 16, 2014 motion to exclude for spoliation (doc. 49) is DENIED.

### IV.     Conclusion

Defendants BMW of North America  LLC ("BMW NA") and Bayerische Motoren Werke AG ("BMW AG")'s December 17, 2013 motion to strike and exclude the opinions of plaintiff's untimely and improper rebuttal expert, Dr. Michael A. Steele (doc. 45) and their January 16, 2014 motion to exclude for spoliation (doc. 49) are DENIED. Plaintiffs' January 17, 2014 unopposed motion for leave of court to file a sur-reply (doc. 50) and March 26, 2014 unopposed motion for leave to a supplemental sur-reply (doc. 62) are GRANTED.

Under the provisions of 28 U.S.C. §636(b)(1)(A), Rule 72(a), Fed. R. Civ. P., and Eastern Division Order No. 91-3, pt. F, 5, either party may, within fourteen (14) days after this Order is filed, file and serve on the opposing party a motion for reconsideration by the District Judge.  The motion must specifically designate the Order, or part thereof, in question and the basis for any objection thereto.  The District Judge, upon consideration of the motion, shall set aside any part of this Order found to be clearly erroneous or contrary to law.

s/Mark R. Abel
United States Magistrate Judge
