IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| GREAT NORTHERN INSURANCE COMPANY, as subrogee of ALLEN L. PATRICK and JEAN A. PATRICK | : <br> : <br> : CIVIL ACTION NO.: 2:11-cv-01153 <br> : |
| and | : JUDGE ALGENON L. MARBLEY |
| PACIFIC INDEMNITY INSURANCE COMPANY, as subrogee of ALLEN L. PATRICK and JEAN A. PATRICK | : <br> : <br> : <br> : |
| Plaintiffs, | : |
| v. | : |
| BRENTLINGER ENTERPRISES d/b/a MIDWESTERN AUTO GROUP and MIDWESTERN BMW <br> and | : <br> : <br> : <br> : |
| BMW OF NORTH AMERICA, LLC | : |
| and | : |
| BAYERISCHE MOTOREN WERKE AG | : |
| Defendants. | : |

**PROPOSED VOIR DIRE OF DEFENDANTS BMW OF NORTH AMERICA, LLC AND BAYERISCHE MOTOREN WERKE, AG**

Now come Defendants, BMW of North America, LLC and Bayerische Motoren Werke, AG ("BMW AG"), and submit the following proposed voir dire topics and questions:

**I.      Forensic Entomology.**

Defendants may call Dr. David Shetlar, a forensic entomologist at the Ohio State University, to testify concerning certain insects found in and around the mammal carcass discovered in the subject vehicle on November 1, 2013. Defendants believe any jurors familiar with the concepts, methods, or tactics used by forensic entomologists should be questioned to determine whether, by popular culture or any other manner, they hold strong, irrational, or

unsupported preconceived understandings of the science.  As such, Defendants propose the following questions:

1. Does anyone watch television shows or movies centered on crimes or crime scene investigation?
2. Are any of you familiar with the concept, sometimes portrayed in these types of shows, of estimating the date a mammal died by analyzing the state of decomposition?
3. Do you understand this can also include analysis of the insects that are found with the mammal?
4. A squirrel carcass was discovered in the 2007 BMW 328xi which is at the center of this case.  Defendants may call Dr. David Shetlar, a forensic entomologist at the Ohio State University, to testify concerning his analysis of the carcass and the insects, as such:
    a. Do any of you have revulsion to hearing about, or seeing pictures of, dead animals?
    b. Do any of you have revulsion to hearing about, or seeing pictures of, insects?
5. Do any of you have any background in the biological sciences?
6. Do any of you have any understanding of the techniques used by forensic entomologists?
7. Do any of you have any understanding of the information relied upon by forensic entomologists?
8. Do any of you believe that estimating the date of an animal's death by analyzing the insects found with the carcass is junk science?
9. Do any of you have reservations about the validity of estimating the date of an animal's death by analyzing the insects found with the carcass?

II. **Pre-Existing Bias Concerning the Ohio State University.**

Defendants may call Drs. David Shetlar and Robert Gates to discuss biology and forensic entomology.  They are currently professors at the Ohio State University ("OSU").

Defendants contend that strong anti-OSU biases could lead a prospective juror to unfairly and prematurely discredit either witnesses' testimony. As such, Defendants propose the following questions:

1. Are any of you OSU alumni?
2. Does anyone have any negative feelings or criticisms toward the staff at OSU?
3. Does anyone have any negative feelings toward the university?
4. Is there anyone who feels that state schools have less qualified professors than other schools?
5. Do you believe that professors at OSU are less qualified than professors at University of Michigan?

### III.     Preconceptions Regarding Rodent Debris Accumulation/Nesting.

The parties basically agree to the fire's cause-and-origin: organic debris was ignited by an exhaust component. Plaintiffs allege the E90 design forced road debris into the engine compartment. Defendants may present evidence demonstrating the organic debris found in the subject vehicle after the fire was compiled purposefully, by a rodent. As such, prospective jurors' experiences and opinions concerning rodent nesting in vehicles may substantially impact their evaluation of this case. As such, Defendants propose the following questions:

1. Does anyone believe it impossible for an animal to build a nest inside the engine compartment of a vehicle?
    a. If yes, explore why that belief exists.
    b. If no, ask: have any of you had an experience with *any animal* (cat, squirrel, chipmunk, possum, bird, etc.) gaining access to the engine compartment of *any type of vehicle* (tractor, lawnmower, motor vehicle, semi, etc.)?
        i. First, establish specific animal and vehicle type;

3

    ii. Request a general description of the facts and circumstances about animal discovery; was this a personal experience, or something they heard from someone else.

    iii. Did you form an understanding or belief as to why that animal gained access to the vehicle's engine compartment?

1. What is that understanding?
2. How was the understanding formed; what do you use to support the understanding?
3. Do you believe your experience will prevent you from fairly evaluating the facts and circumstances in this case as to:
   a. Whether an animal gained access to the subject vehicle?
   b. Any explanation as to why?

## IV.     Financial Interest in Plaintiffs.

Plaintiffs are subsidiaries of Chubb, "the 12th largest property and casualty insurer in the United States [with] a worldwide network of some 120 offices in 25 countries staffed by 10,200 employees. The Chubb Corporation reported $51.3 billion in assets and $14.1 billion in revenues in 2014. According to Fortune magazine, Chubb is the 208th largest U.S.-based corporation."[1] Defendants contend that any direct or indirect financial interest in, or relationship with, Chubb may impact a prospective juror's evaluation of this case. As such, Defendants propose the following questions:

1. Do any of you own stock in Chubb, or in any entity you know to be a Chubb subsidiary or related entity?
    a. Please seek relevant details.

---

[1] Taken directly from http://www.chubb.com/corporate/chubb11887.html

    b. Will this financial interest/relationship affect your ability to fairly and justly evaluate each party's claims in this case?

2. Do any of your immediate family members own stock in Chubb, or in any entity you know to be a Chubb subsidiary or related entity?

    a. Please seek relevant details.

    b. Will this financial interest/relationship affect your ability to fairly and justly evaluate each party's claims in this case?

3. Are any of you currently employed by Chubb, or by any entity you know to be a Chubb subsidiary or related entity?

    a. Please seek relevant details.

    b. Will this financial interest/relationship affect your ability to fairly and justly evaluate each party's claims in this case?

4. Are any of your immediate family members employed by Chubb, or by any entity you know to be a Chubb subsidiary or related entity?

    a. Please seek relevant details.

    b. Will this financial interest/relationship affect your ability to fairly and justly evaluate each party's claims in this case?

**V.**    **Other Experiences With House/Business Fires.**

The Patricks' home and vehicle were destroyed in the fire. Defendants contend prospective jurors who have had significant positive or negative experiences with house fires could have formed preconceived notions, expectations, or strong emotional responses which could impact their evaluation of this case. As such, Defendants propose the following questions:

1. Have any of you had a house that you were living in catch on fire?

    a. Please provide a very general description of the facts and circumstances surrounding the fire:

      b. Do you know what caused the fire/how the fire started?

            i. If yes: how do you know how the fire started?

            ii. If no: do you have a theory about how the fire started?

      c. Were you physically injured in/by the fire?

            i. Please thoroughly explore any instances of personal injury from a fire.

      d. How significant was the property damage?

      e. Did the fire affect you emotionally?

      f. Did the fire affect you financially?

      g. Did anything about that experience affect you so significantly that you would not be able to fairly evaluate the facts of this case?

2. Has anyone purchased a house with fire damage?
3. Purchased a house with water damage?
4. Purchased a house with hidden damage?
5. Have any of your immediate family members had a house catch fire?

      a. Same line of questioning regarding the experience.

**VI.**   **Other Experiences With Insurance Companies and Adjusters.**

Plaintiffs primary damages expert, Byron Smith, was also the adjuster assigned to evaluate, monitor, and resolve the Patricks' claims. The relationship was contentious at times, and resulted in Plaintiffs paying the Patricks over one-half-million dollars more than Smith initially estimated. Defendants contend prospective jurors who have had significant positive or negative experiences with insurance adjusters, or the process of adjusting claims, could have formed preconceived notions, expectations, or strong emotional responses which could impact their evaluation of this case. As such, Defendants propose the following questions:

1. Have any of you personally had to file a claim with an insurance company about a house fire?

      a. Please seek details concerning the fire.

6

    b. Please seek details concerning the interactions with the adjuster, including residual feeling, thoughts, opinions, etc.

2. Have any of you personally had to file a claim with an insurance company about any type of product or issue?

3. Does anyone understand what the term low-balling means?

    a. Please describe what that term means to you.

4. Does anyone just outright dislike insurance adjusters?

    a. Please seek details.

5. Does anyone just outright dislike insurance companies?

    a. Please seek details.

6. Has anyone had an experience where an insurance adjuster did not offer you a fair price for your lost or destroyed property?

    a. Please seek details.

    b. Did this experience leave you with any impressions or understandings of the insurance adjusting business?

    c. Do you believe that impression/understanding is strong enough to affect your ability to fairly evaluate all parties' claims?

7. Has your experience with the adjuster/company impacted your opinions or attitudes severely?

8. Will you be able to fairly evaluate all parties' claims, even though one is an insurance company with adjuster witnesses?

**VI.  Other Experiences With Foreign Vehicles or Manufacturers.**

   BMW AG manufactured the subject vehicle, a 2007 BMW 328xi, in Germany. Defendants contend prospective jurors who have had significant positive or negative experiences with foreign manufacturers, or foreign products, could have formed preconceived

7

notions, expectations, or strong emotional responses which could impact their evaluation of this case.  As such, Defendants propose the following questions:

1. Has anyone ever owned a BMW vehicle?
    a. What were the vehicle's model-year, make, and model?
    b. Please describe your ownership or use of the vehicle, generally.
    c. Please describe your experience with the vehicle; was it positive or negative?
    d. Will those experiences prevent you from fairly evaluating all parties' claims?
2. Has anyone ever owned any other foreign-made vehicle?
    a. What were the vehicle's model-year, make, and model?
    b. Do you believe there is any relationship between [manufacturer] and BMW?
    c. Please describe your ownership or use of the vehicle, generally.
    d. Please describe your experience with the vehicle; was it positive or negative?
    e. Even in light of those experiences, can you be fair and reasonable in your evaluation of all parties' claims?
3. Have any of your immediate family members owned a foreign-made vehicle?
    a. What were the vehicle's model-year, make, and model?
    b. What is your relationship with that person?
    c. Please describe your experience with that vehicle.
    d. Please describe your understanding of the owner's experience.
    e. Please describe what feelings/opinions you have as a result of this experience.
    f. Please describe any facts/thoughts which shed light on these feelings/opinions.
    g. Even in light of those experiences, can you be fair and reasonable in your evaluation of all parties' claims?
4. Has anyone ever had an experience with a foreign-made vehicle that was not favorable?
    a. What were the vehicle's model-year, make, and model?
    b. What is your relationship with that person?

    c. Please describe your experience with that vehicle.

    d. Please describe your understanding of the owner's experience.

    e. Please describe what feelings/opinions you have as a result of this experience.

    f. Even in light of those experiences, can you be fair and reasonable in your evaluation of all parties' claims?

5. Will your experiences with foreign-made products, or foreign manufacturers, impede your ability to fairly evaluate each parties' claims?

Respectfully submitted,

/s/ John R. Conley
Lawrence A. Sutter (0042664)
John Conley (0084079)
Sutter O'Connell
3600 Erieview Tower
1301 East 9th Street
Cleveland, Ohio 44114
(216) 928-2200
Fax: (216) 928-4400
*Attorneys for Defendants,*
*BMW of North America, LLC and*
*Bayerische Motoren Werke AG*

9

**CERTIFICATE OF SERVICE**

I hereby certify that on the 19th day of June, 2015, *Defendants' Proposed Voir Dire* was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ John R. Conley
John Conley (0084079)