## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| **GREAT NORTHERN INSURANCE COMPANY,** *et al.*, | : : : | |
| Plaintiffs, | : : | **Case No. 2:11-CV-1153** |
| v. | : : | **JUDGE ALGENON L. MARBLEY** |
| **BMW OF NORTH AMERICA LLC,** *et al.*, | : : : | **Magistrate Judge Kemp** |
| Defendants. | : | |

## OPINION & ORDER

### I.       Introduction

This matter is before the Court on the Plaintiffs' following motions in limine: (1) to exclude evidence regarding the alleged lack of similar incidents, (Doc. 108); (2) to exclude evidence that the Patricks' home was demolished and rebuilt, (Doc. 110); and (3) to exclude expert testimony of Thomas W. McCloskey, (Doc. 111). In addition, this matter is before the Court on the Defendants' following motions in limine: (1) to exclude evidence of product recalls and traffic safety bulletins, (Doc. 107); (2) to exclude evidence of subsequent model vehicles, (109); (3) to exclude evidence of alleged other similar incidents, (Doc. 113); (4) to exclude or limit the testimony of Richard Clarke, (Doc. 119); (5) to exclude or limit the testimony of Michael Steele, (Doc. 120); (6) to limit the testimony of Kevin Keaton, (Doc. 121); (7) to exclude the testimony of Nicholas Biery, (Doc. 123); and, (8) to limit the testimony of Jeffrey Lindsey, (Doc. 126).

### II.       Background

The facts of this case have been briefed fully in this Court's February 4, 2015 Opinion & Order denying Defendants' motion for summary judgment. (Doc. 100). In summary, this suit

arises from a fire that occurred on March 16, 2010, in a 2007 BMW 328xi leased by the Patricks. The fire resulted in substantial damage to the vehicle and the Patricks' home. The Plaintiffs filed this subrogation lawsuit against Defendants after reimbursing the insured. Defendants do not contest that the fire began in the engine compartment of the BMW, and was caused by the combustion of leafy material, but do contest how such material arrived in the engine compartment. Specifically, Plaintiffs allege that the fire was caused by a design defect of the stiffener plate, or under-engine compartment cover, which is to blame for the accumulation of combustible debris too close to hot exhaust components. Defendants deny that the stiffener plate is defective as designed.

On June 19, 2015, at the Final Pretrial Conference in this case, the Court made rulings on the pending motions in limine, which are restated below, *seriatim*.

### III.    Legal Standards

### A.    Motions in Limine

This Court has summarized the law related to motions in limine as follows:

> Motions in limine allow the Court to rule on the admissibility of evidence in advance of trial in order to expedite proceedings and give the parties advance notice of the evidence upon which they may not rely to prove their case. *See Jonasson v. Lutheran Child & Family Servs.,* 115 F.3d 436, 440 (7th Cir.1997). To prevail on a motion in limine, the moving party must show that the evidence is clearly inadmissible. *Ind. Ins. Co. v. Gen. Elec. Co.,* 326 F.Supp.2d 844, 846 (N.D.Oh.2004). Courts are typically "reluctant to grant broad exclusions of evidence in limine because a court is almost always better situated during the actual trial to assess the value and utility of evidence." *Black v. Columbus Pub. Sch.,* No. 2:96–CV–326, 2007 U.S. Dist. LEXIS 68672, at *2, 2007 WL 2713873 (S.D.Oh. Sept. 17, 2007); *accord Sperberg v. Goodyear Tire & Rubber Co.,* 519 F.2d 708, 712 (6th Cir.1975). If the Court does deny a motion in limine, however, the Court can reconsider the admissibility of the evidence as the proceedings give context to the pretrial objections. *Black,* 2007 U.S. Dist. LEXIS 68672, at *2, 2007 WL 2713873.

*Jackson v. City of Gahanna*, No. C2:08-CV-0068, 2011 WL 587283, at *2 (S.D. Ohio Feb. 9, 2011) (Marbley, J).

### A.      Federal Rules of Evidence 401, 402, and 403

Relevancy is the threshold determination regarding the admissibility of evidence. *Cervelli v. Thompson/Ctr. Arms,* No. C2-99-1409, 2002 WL 193577, at *4 (S.D. Ohio Jan. 28, 2002) (citing *Koloda v. General Motors Parts Div., General Motors Corp.,* 716 F.2d 373, 375 (6th Cir.1983), and Fed.R.Evid. R. 402. The "standard for relevancy under Rule 401 is 'extremely liberal.' " *Ayers v. City of Cleveland*, 773 F.3d 161, 169 (6th Cir. 2014) (citing *Dortch v. Fowler,* 588 F.3d 396, 400 (6th Cir.2009)). According to Federal Rule of Evidence 401, relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Under Rule 402, all irrelevant evidence is inadmissible.

Rule 402 is constrained by Rule 403, which states that "although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Under Rule 403,

> [t]his Court has broad discretion in deciding issues of admissibility . . . . *Koloda,* 716 F.2d at 378. This discretionary power does not allow the Court to exclude competent evidence which is essential and vital to a litigant's case unless there is a sound and practicable reason for barring it. *Id.* at 378.

> The Sixth Circuit has noted the requirement that the probative value must be *substantially* outweighed is significant in excluding evidence under this rule. *U.S. v. Hans,* 684 F.2d 343 (6th Cir.1982). In addition, to exclude evidence under Rule 403, it must be more than damaging to the adverse party; it must be *unfairly* prejudicial. *Id.* The Sixth Circuit has found evidence not to be unfairly prejudicial where the evidence is directly probative of a defendant's knowledge as of the time of the incident in question, where it does not require a foray into collateral matters damaging to plaintiff's interests or appeal to the emotions or prejudices of the jurors. *Koloda,* 716 F.2d at 377–78.

3

*Cervelli*, 2002 WL 193577, at *2-3.

## B.    Federal Rule of Evidence 702

Under Rule 702, an expert's opinion is admissible, by the discretion of the trial court, if: (1) the expert is qualified as such by knowledge, skill, experience, training, or education; (2) the testimony is relevant, meaning it will assist the trier of fact to understand the evidence or to determine a fact in issue; and (3) the testimony is reliable, meaning it is based on sufficient facts or data, is the product of reliable principles and methods, and the witness has applied the principles and methods reliably to the facts of the case. *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 528-29 (6th Cir. 2008).

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, the Supreme Court held that while the evaluation of expert testimony is generally left to juries, district courts must serve in a "gatekeeping" capacity, "ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." 509 U.S. 579, 597-98 (1993).  *Daubert* set forth a non-exclusive check-list for assessing the reliability of scientific expert testimony: (1) whether the theory or methodology has been or can be tested; (2) whether it has been subjected to peer review; (3) whether it has a known or potential rate of error; and (4) whether it has been generally accepted in the scientific community. *Id.* at 593-94.

In *Kumho Tire Co. v. Carmichael*, the Supreme Court clarified that the reliability inquiry *Daubert* outlined covers not just scientific testimony, but also expert testimony based on—in the language of Rule 702—"technical" and "other specialized knowledge." 526 U.S. 137 (1999). In *Kumho* the Supreme Court also recognized, however, that the *Daubert* factors "may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony." *Kumho Tire,* 526 U.S. at 150; *see Gross v. Comm'r,*

272 F.3d 333, 339 (6th Cir. 2001) (explaining that the *Daubert* factors "are not dispositive in every case" and should be applied only "where they are reasonable measures of reliability of expert testimony").

　　This Circuit has held that an expert must utilize in the courtroom the "same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Best v. Lowe's Home Ctrs., Inc.,* 563 F.3d 171, 177 (6th Cir. 2009) (internal quotation marks omitted). Determining the admissibility of expert testimony pursuant to Rule 702, however, entails a flexible inquiry. *Daubert,* 509 U.S. at 594. The burden on a party proffering expert testimony is to "show by a preponderance of proof that the expert whose testimony is being offered is qualified and will testify to scientific knowledge that will assist the trier of fact in understanding and disposing of relevant issues." *Sigler v. Am. Honda Motor Co.,* 532 F.3d 469, 478 (6th Cir. 2008) (citing *Pride v. BIC Corp.,* 218 F.3d 566, 578 (6th Cir.2000) (internal quotation marks omitted)).

　　Where the reliability of the evidence is in dispute, it is more appropriate for a judge to admit the evidence than to keep it from the fact-finder because "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert,* 509 U.S. at 596. Additionally, if the evidence is deemed admissible by a court, but it is ultimately found "insufficient to allow a reasonable juror to conclude that the position more likely than not is true, the court remains free to direct a judgment." *Id.*; *see* Fed. R. Civ. P. 50.

## IV.    Analysis

### A.    Plaintiffs' Motions in Limine

#### 1.    Plaintiffs' Motion to Exclude Evidence of No Prior Similar Incidents

The Plaintiffs do not argue that it is never appropriate for a defendant to submit evidence that no similar incidents of malfunction in the same product has ever occurred, but only that in this case, Defendants are unable to lay the proper foundation to prove that if prior, similar accidents had occurred, the witness would probably have known about them. They contend that Thomas Slaba, who will testify that no prior incidents have occurred, began working for BMW in 2011, at least four years after the 2007 BMW 328xi E90 platform was put on the market, and so would not be aware of earlier incidents. In addition, Plaintiffs contend that BMW does not maintain a database to keep track of fire reports in E90 vehicles.

The law of this Circuit permits admission of evidence of lack of prior similar incidents. *Minichello v. U.S. Indus., Inc.*, 756 F.2d 26, 31 (6th Cir. 1985) (finding the modern trend favors admission of evidence of nonexistence of similar incidents to show causation); *Koloda v. Gen. Motors Parts Div., Gen. Motors Corp.*, 716 F.2d 373, 375 (6th Cir. 1983) (permitting introduction of lack of prior complaints or similar incidents arising out of the use of a lubricant to show defendant's lack of knowledge that any dangerous propensities existed; whether it could be used to prove the defect was not before the court). As the Sixth Circuit has noted, "the mosaic of evidence that comprises the record before a jury includes both the evidence *and* the lack of evidence on material matters." *Dortch v. Fowler*, 588 F.3d 396, 401 (6th Cir. 2009) (citing *United States v. Poindexter,* 942 F.2d 354, 360 (6th Cir.1991) (emphasis in original). Thus, evidence of lack of similar incidents is relevant to Defendants' claim that the BMW does not have a design defect.

The issue, however, is whether such evidence is prejudicial or misleading under Rule 403, which is dependent on whether Defendants can lay a sufficient foundation to show that their lack of knowledge of similar incidents actually indicates similar incidents likely have not occurred. Both parties rely on *Forrest v. Beloit Corp.*, 424 F.3d 344, 358 (3d Cir. 2005), which held that a defendant can meet its burden of showing that if a similar incident had occurred, it would have known, by laying a proper foundation. The *Forrest* Court reasoned that a party can meet this burden by showing the following three elements:

> (a) *similarity*—the defendant must show that the proffered testimony relates to substantially identical products used in similar circumstances; (b) *breadth*—the defendant must provide the court with information concerning the number of prior units sold and the extent of prior use; and (c) *awareness*—the defendant must show that it would likely have known of prior accidents had they occurred.

*Id.* at 358. This Court adopts the rule in *Forrest*, and will apply it accordingly.

In terms of breadth and similarity, Defendants argue that the proffered testimony relates to substantially identical products—Slaba testifies that from 2004-2012, approximately 1.8 million E90 vehicles were sold, and they were equipped with identical or virtually identical under-engine compartments. Further, Defendants argue that it can be assumed that most of these vehicles were used in similar circumstances—driven on roads in suburban environments.

In terms of awareness, Defendants put forth that Mr. Yeldham—BMW's Special Product Investigation Manager and certified fire inspector—would have known about a similar fire. He personally investigates or oversees investigation of any fire incident. Defendants state it also has a network of information gathering, including from dealerships. Further, BMW owners are provided vehicle maintenance the first 48,000 months, at which time the underbody of the car is inspected and cleaned. Thus, Defendants argue they would have known about debris accumulation on the stiffener plate. In addition, Thomas Slaba will testify that he routinely evaluates materials provided by BMW NA regarding vehicle fire investigations. He will testify

that he thoroughly interviewed members of different departments regarding this issue, and that he reviewed Legal Department files on fires prior to his deposition, both facts that overcome the Plaintiffs' assertion that he would not have known about similar incidents because of his more recent employment at BMW.

This Court finds that Defendants have put forth sufficient evidence of a foundation to indicate they likely would have known had a similar vehicle fire occurred in the same model of BMW. While the foundation is imperfect, as they have not stated definitively that they keep track of all vehicle fires in one database, they have shown that they have multiple methodologies to collect such information. Further, this weakness can be resolved through cross-examination. Thus, Plaintiffs' motion is **DENIED**.

### 2.    Plaintiff's Motion to Preclude Evidence that the Patricks' Home was Demolished and Rebuilt

Plaintiffs argue that under Federal Rules of Civil Procedure 402 and 403, this Court should preclude Defendants from offering evidence that the Patricks' home was demolished and rebuilt. They argue that such evidence is irrelevant because Plaintiff Pacific Indemnity Insurance Company is not seeking to recover damages for the cost to tear down and rebuild the Patricks' home, which their expert estimates would have exceeded $1,000,000, but only to recover damages for the reasonable cost of repair, which their expert approximated was $850,000. Plaintiffs contend that at the time the insurance claim relating to the repair damages for the home were finalized, the Plaintiffs had no knowledge that the home would be torn down and rebuilt, and, so, they did not consider the cost to rebuild the home as a relevant factor in their adjustment of the Patricks' claim. Plaintiffs also argue that the admission of such evidence would be prejudicial under Rule 403 because it may mislead jurors into believing that: (1) the Plaintiff considered the cost to rebuild the home when adjusting the Patricks' claim; (2) the Plaintiff paid

the Patricks more than the cost of repair; and (3) the Patricks were dishonest in their dealings with the insurance companies.

Defendants respond that such evidence is relevant because the evidence shows that estimates prepared by Plaintiff's' expert adjuster and independent contractor estimated the cost of repair was less than $450,000, yet, one year later, the Plaintiffs paid the Patricks $839,488.55 for cost of repair. Further, Defendants contend that the record is replete with evidence that the amount actually paid represents the cost of having the partially-damaged home razed and rebuilt, which is bolstered by evidence that the Patricks did in fact raze their home and build a new one with insurance monies received. This includes Mr. Patrick's own testimony that the Plaintiffs agreed to pay him approximately $800,000 to demolish and rebuild the home; and, evidence of intentional delay on the Patricks' behalf, which lead to further damage to the home, and fulfilled the Patricks' alleged desire to have the home fully rebuilt.

As Plaintiffs set forth, the proper measure of damages for temporary injury to real property is the reasonable cost of restoration. *Martin v. Design Constr. Serv*. 902 N.E.2d 13 (Ohio 2009). At trial, Plaintiffs will present testimony that they paid Plaintiffs only for the cost of repair, accordingly to Ohio law. In contrast, Defendants intend to present evidence that Plaintiffs understood they were paying for the cost of rebuilding a new home. Accordingly, the fact that the Patricks did in fact raze their home and build a new one makes it more probable that Plaintiffs paid them for that purpose. *See* Fed. R. Evid. 401. This Court does not find that such evidence will mislead the jury under Rule 403; instead, its relevance will assist the jury in making a determination regarding whether the monies paid to the Patricks were merely for cost of repair, or were, in fact, for rebuilding the home, in contravention of Ohio law. Thus, Plaintiffs' Motion is hereby **DENIED**.

9

**3.      Plaintiffs' Motion to Exclude Expert Testimony of Thomas W. McCloskey**

Plaintiffs argue that the testimony of Defendants' damages expert, Thomas McCloskey, is inadmissible because: (1) his calculations were based on an improper legal standard for calculating damages under Ohio law; and (2) his opinion is unreliable and not independently verified.

**a.      Whether McCloskey's Testimony is Relevant**

Plaintiffs argue that McCloskey's reliance on an improper legal standard when calculating damages renders his opinion irrelevant under Rule 702. *See Info-Hold, Inc. v. Muzak LLC*, No. 1:11-CV-283, 2013 WL 4482442, at *2-5 (S.D. Ohio Aug. 20, 2013) *reconsideration denied*, No. 1:11-CV-283, 2013 WL 6008619 (S.D. Ohio Nov. 13, 2013) *and aff'd in part, rev'd in part*, 783 F.3d 1365 (Fed. Cir. 2015) (excluding expert's testimony, and citing as his most egregious error his reliance on an improper legal standard for calculating damages as a matter of law).

Under Ohio law, if the injury to noncommercial real property is temporary or can be repaired, "the measure of damages is the reasonable cost of restoration, plus reasonable compensation for the loss of the use of the property between the time of the injury and the restoration, unless such cost of restoration exceeds the difference in the market value of the property before and after the injury, in which case the difference in market value becomes the measure." *Martin v. Design Constr. Servs., Inc*., 2009-Ohio-1, ¶¶ 12-27, 121 Ohio St. 3d 66, 68-72, 902 N.E.2d 10, 13-15. The rule that the cost of restoration cannot exceed the difference between market value before and after the injury is limited, however. *Id*. This is because "a plaintiff need not prove diminution in the market value of the property in order to recover the

reasonable costs of restoration, but either party may offer evidence of diminution of the market value of the property as a factor bearing on the reasonableness of the cost of restoration." *Id.*

Plaintiffs contend that McCloskey veered from the proper legal standard because, although he calculated the cost of repair of the Patricks' home to arrive at the base damages amount, he then discounted that amount to account for depreciation. Further, McCloskey based the depreciation amount on the value of the entire property. Plaintiffs argue that it was improper to base the depreciation amount on the value of the property under Ohio law, because cost of repair is the proper legal standard for temporary harm to real property.

This Court finds that the Ohio rule that the proper measure of damages for temporary harm to real property is cost of repair is not in conflict with McCloskey's expert opinion that those damages should be discounted to account for depreciation of the property. Further, basing that depreciation amount on the actual cash value of the property, rather than the cost of repair, is not undermined directly by the above expression of Ohio law regarding the proper calculation of damages in temporary injury to property cases. Instead, McCloskey opines that after determining the restoration costs, it is proper to reduce those costs by the depreciation amount of the property, and the depreciation amount is appropriately based on the total value of the property, not just the restoration amount. Whether cost of repair should be reduced by property depreciation, and what methodology should be used in calculating cost of depreciation, is for a valuation expert to prove. Plaintiffs will be free to cross-examine McCloskey as to this point, and Plaintiffs also are free to offer rebuttal testimony. Thus, this testimony is admissible under Rule 402.

### b.      Whether McCloskey's Testimony is Reliable

Next, Plaintiffs argue that Mr. McCloskey's testimony is not reliable under Rule 702 because: (1) he did not perform an independent evaluation, but, instead, relied on estimates put

forth by other experts without evaluating the bases for these estimates; (2) he never contacted the contractors to verify if estimates were fair/reasonable; and (3) he did not perform his own programming or computer analysis. Further, Plaintiffs contend that McCloskey presented no independent basis for his determination that the proper depreciation figure is 30%.

Plaintiffs urge this Court to rely on *Ask Chemicals, LP v. Computer Packages*, Inc., 593 F. App'x 506, 510-11 (6th Cir. 2014), which held that particularly in light of the unreliability of the evidence underlying plaintiff's expert's estimates, the district court was within its discretion to determine that the lack of independent verification or analysis of the data on which the expert's opinion relied rendered his opinions unreliable.

Defendants respond that McCloskey's cost of repair estimate relied entirely on 3,000 pages of an insurance file generated by Plaintiffs' own adjuster and expert, which is precisely the type of information that adjusters need to rely on to opine as to how the claim was resolved. This Court agrees. Unlike in *Ask Chemicals*, there is no evidence that these insurance files are inherently unreliable, and Plaintiffs do not argue that they are unreliable.

In terms of McCloskey's opinion that 30% is the proper depreciation rate, Defendants argue McCloskey's opinion is not arbitrary, and cite to McCloskey's deposition, in which he states: "I didn't say it didn't have any basis in fact. I said the percentage I elected to use was predicted on what I can see in the photograph, as so on, from that house, and so on." At this point in time, this Court finds that McCloskey's qualifications, which Plaintiffs do not challenge, qualify him to opine as to a proper depreciation rate. It is well established that experience-based testimony satisfies *Daubert's* reliability requirements. *United States v. Poulsen*, 543 F. Supp. 2d 809, 811-12 (S.D. Ohio 2008) (Marbley, J) (finding expert witness' "proposed expert testimony grows out of the knowledge and experience he acquired as an FBI agent, not out of any

12

procedures he has employed-or should be expected to have employed-in forming his opinions")

(citing *First Tennessee Bank National Association v. Barreto,* 268 F.3d 319, 333 (6th Cir.2001)

(finding *Daubert* factors related to a reliable methodology inapplicable where expert's testimony

was derived from his practical experience in the banking industry)). This Court finds, however,

that considering McCloskey's deposition testimony, it will allow a *voir dire* of McCloskey for

the proper foundation underlying his opinion, to ensure it is not based on utter speculation.

In sum, Plaintiffs' Motion is **DENIED**.

## B.    Defendants' Motions in Limine

### 1.    Defendants' Motion to Exclude Evidence of Product Recalls and Traffic Safety Bulletins

Defendants argue that evidence of product recalls and safety bulletins are not relevant,

and should be excluded under Rules 401 and 403, as Richard Clarke, Plaintiffs' expert, conceded

in his deposition that he has not discovered any relevant information regarding recalls associated

with the 2007 BMW 328xi.  Since no on-point bulletins have been discovered, Defendants assert

it would mislead the jury to discuss unrelated recalls or bulletins.

Plaintiffs respond that they do not intend to offer evidence in their case in chief with

respect to traffic safety bulletins or product recalls. Should BMW "open the door" through

evidence presented by their own witnesses, however, they request that they be permitted to

introduce evidence of safety bulletins and/or product recalls issued.

Considering Plaintiffs' representation to this Court that they do not have any such

evidence, this Court finds that such unidentified evidence is irrelevant. Accordingly, Defendants'

motion is hereby **GRANTED**. If Defendants, however, offer evidence of lack of safety bulletins

in their case in chief, this Court will reevaluate its determination, should Plaintiffs attempt to

enter evidence of safety bulletins or product recalls.

**2.      Defendants' Motion to Exclude Evidence of Subsequent Model Vehicles**

Pursuant to Rules 401, 402 and 403, Defendants request that this Court preclude Plaintiffs from introducing, discussing or referring to the F30 platform, which is the next generation of the 3-series BMW after the E90 series. They argue the F30 is a complete redesign, and without any evidence establishing similarity, the F30 has no relevance to this case. Further, they argue that Plaintiffs have not developed any evidence to suggest that the F30 stiffener plate was designed to allow debris to pass through the engine compartment; in fact, the stiffener plate's cutout is filled with the axle gear, which extends below the plate, to permit cooling of the axle gear.

Plaintiffs respond that the stiffener plates in both models perform the same essential function, and introduction of evidence showing that the F30 platform has a stiffener plate with holes is relevant to Plaintiffs' contention that a safer alternative design of the stiffener plate is feasible.

While a subsequent design is not permissible to prove a design defect under Rule 407, it is admissible to show the feasibility of an alternative design and/or remedial measures. *Siegel v. Dynamic Cooking Sys., Inc.*, 501 F. App'x 397, 405 (6th Cir. 2012). This issue hinges on whether the F30 series is so dissimilar from the E90 series that they cannot be compared without substantially prejudicing the Defendants. This Court is not persuaded currently that an immediately subsequent model of the same vehicle is so dissimilar that any reference to it is irrelevant. Indeed, for the purposes of discovery, courts generally permit "discovery of similar, if not identical, [product] models[.]" *Tolstih v. L.G. Electronics, USA, Inc.*, No. CIV.A. 2:07-CV-582, 2009 WL 439564, at *5 (S.D. Ohio Feb. 20, 2009). Thus, this Court holds that the F30

model is admissible to show feasibility of alternative design, although it is not admissible to prove the design defect. Accordingly, Defendants' motion is hereby **DENIED**.

### 3. Defendants' Motion to Exclude Evidence of Alleged Other Similar Incidents

Defendants urge this Court to exclude testimony under Rules 401, 402 and 403 that Slaba is aware of 20-30 vehicle fires in BMW E-90 series where BMW was unable to determine the cause of the fire. Defendants argue that evidence of prior similar incidents is admissible only if Plaintiffs meet their burden of showing the 20-30 vehicle fires were "substantially similar," meaning they occurred in the same model and design of vehicle, were caused by the same defect, and occurred under similar circumstances. *Tolstih v. L.G. Electronics, USA, Inc.*, No. CIV.A. 2:07-CV-582, 2009 WL 439564, at *5 (S.D. Ohio Feb. 20, 2009). Defendants contend that Plaintiffs cannot meet their burden.

Plaintiffs respond that it did not intend to introduce evidence in their case in chief that there have been other fires in BMW vehicles which were substantially similar to the fire in this case. If Defendants open the door, however, by offering evidence of lack of similar incidents, Plaintiffs will seek to introduce evidence that there have been at least 20 to 30 reported fires involving BMW E90 platform vehicles, many of which have undetermined causes.

The Sixth Circuit has endorsed the use of prior accident evidence. *Bryan v. Emerson Electric Co.,* No. 87–6027, 1988 WL 90910, at *4 (6th Cir. Sept. 1, 1988). Such evidence, however, is limited by the "substantial similarity" test, which is an outgrowth of the application of Rules 401 and 403. *Id.* If a prior accident is not similar in some way to the case before the Court, then its admission will not make it more, or less, probable that the plaintiff suffered an injury; it will not prove any other issue in the particular case. *Id.* The plaintiff has the burden of

showing the substantial similarity between prior accidents and his own. *Croskey v. BMW of N. Am., Inc.*, 532 F.3d 511, 518 (6th Cir. 2008).

The degree of similarity required to ensure the relevancy of a prior accident or injury, however, will vary with the issue to which the evidence is directed. *Koloda v. General Motors Parts Div., General Motors Corp.,* 716 F.2d 373, 375 (6th Cir.1983). "Such issues may include: (1) physical condition or defect; (2) causation; (3) existence of a dangerous situation at the time of the accident; or (4) notice or knowledge of danger." *Id.* "If the prior occurrence is offered to prove notice, a lesser degree of similarity is required provided the accident would have tended to warn the defendant." *Cervelli*, 2002 WL 193577, at *2 (citing *Bryan,* 1988 WL 90910, at *5). The Sixth Circuit has found evidence of prior similar incidents to be relevant to provide notice of a dangerous condition, as long as similar circumstances exist. *Id.* (citing *Bryan,* 1988 WL 90910, at *5).

This Court finds that evidence of 20 to 30 undiagnosed fires in E90 platform vehicles is relevant as it relates to Defendants' contention that it is certain no other similar incidents have ever occurred. Further, this Court holds such evidence is admissible to show Defendants were on notice that some unknown defect which causes fires may have existed in the platform. At this time, however, this Court excludes this evidence for any other purpose, particularly to prove causation, as Plaintiffs have not shown they will lay the proper foundation to prove the prior incidents were sufficiently similar to the accident at issue. Thus, Defendants' motion is **GRANTED** in part, and **DENIED** in part.

### 4. Defendants' Motion to Exclude or Limit the Testimony of Richard Clarke

This Court already analyzed and rejected Defendants' prior motion to exclude the testimony of Richard Clark, (*see* Doc. 100), and will not revisit that motion.

Defendants ask, in the alternative, that this Court exclude Clarke's deposition statements made in response to photographs shown to him of the undersides of other manufacturers' vehicles, which were taken by Defendants' expert, Richard Keefer. Defendants argue that such testimony is excludable under Rule 702 because Clarke did not rely upon an evaluation of other vehicles prior to forming his opinions in this case; he was shown the photographs of other vehicles only during his deposition, and thus his opinions about the undersides of other cars are not reliable. Defendants add that even if this Court admits Clarke's deposition testimony, he should not be permitted independently to introduce evidence of other vehicle designs. Defendants argue that such testimony would only mislead or confuse the jury because no discovery has been done on these designs, nor any scientific evaluation conducted on the question of comparable vehicle designs.

This Court holds that Clarke is permitted to testify as to his own statements in the context of his deposition. Further, it is within his general knowledge as an engineer and mechanic to opine about differences between different cars' under- engine compartments. *See Poulsen*, 543 F. Supp. 2d at 811-12 (finding it is well established that experience-based testimony satisfies *Daubert's* reliability requirements). He is not permitted, however, to testify as to comparator vehicles that he did not discuss in his deposition or in his expert report, as Defendants do not have notice of such expert opinions. Thus, Defendants' motion is **DENIED** in part, and **GRANTED** in part.

### 5.      Defendants' Motion to Exclude or Limit the Testimony of Michael Steele

Steele is a rebuttal witness, retained to respond to Dr. Gates' opinions that a squirrel caused the collection of debris which caused the fire. Steele primarily opines that it is more likely than not that the fox squirrel whose remains were found on November 1, 2013 inhabited

the vehicle after it was stored, outside, at the SEA facility. Defendants argue that Steele has no education, training or experience regarding vehicle design, so under Rule 702 he should not be permitted to offer the following opinions stated during his deposition: (1) that spaces on both sides of the car would have allowed road debris to accumulate on top of the stiffener plate; and, (2) that it would be impossible for an animal to crawl from the vehicle's engine compartment to the back end of the vehicle without crawling directly alongside the exhaust system. They also argue that Steele is not an entomologist, so he is not qualified to analyze the insects, allegedly maggots, identified within the squirrel carcass he inspected.

This Court holds that Steele is not permitted to testify as to vehicle design, as such testimony is outside of his area of expertise, and any such testimony is unrelated to his opinion rebutting the "squirrel theory." This holding does not mean, however, that he cannot testify as to the behavior a squirrel may or may not have exhibited in order to enter the vehicle, as long as those opinions do not depend on assumptions regarding vehicle design that he is unqualified to make. Further, Steele is a scientist with a PhD is biology, and thus is qualified to opine as to the remains of the insect found in the squirrel carcass. Accordingly, Defendants' motion is **GRANTED** in part, and **DENIED** in part.

### 6.      Defendants' Motion to Limit the Testimony of Kevin Keaton

Keaton is a fire cause-and-origin expert, who, Defendants argue, has no education and training in vehicle design. As such, Defendants assert that under Rule 702 he cannot: (1) discuss vehicle design, aerodynamics or airflow, including by opining that openings in the vehicle's wheel wells allowed organic debris to get within the origin area; or, (2) discuss his opinion that he discovered no indication there was any type of rodent activity in the area of origin.

Plaintiffs retort that as a vehicle fire-origin expert, Keaton is qualified to use deductive reasoning to opine as to how the debris causing the fire may have gotten onto the stiffener plate. Further, they assert that since he is a fire-origin expert, he is permitted to testify from experience that he has never seen a rodent build a nest in a vehicle that is operated daily and stored in a garage.

This Court concludes that as a vehicle fire-origin expert, Keaton is qualified to opine as to how debris may have arrived at the point of the fire's origin, as well as to opine as to whether, based on his experience, a squirrel next may have caused the debris accumulation. Any weaknesses in his qualifications go to the weight of his testimony, not to its admissibility. Defendants' Motion is hereby **DENIED**.

### 7.      **Defendants' Motion to Exclude or Limit the Testimony of Nicholas Biery**

Nicholas Biery was a participant in the SEA team of experts who investigated the vehicle fire. Defendants argue that Nicholas Biery's only role was evaluating a small portion of loose debris for rodent activity. Defendants assert Biery is unqualified under Rule 702 to offer his opinions regarding his search of that debris because he never before had examined evidence for rodent activity, and he has not received specialized training in biology or zoology.

Plaintiffs respond that as an expert who assisted the SEA fire-causation experts in the investigation of the vehicle, Biery will provide relevant testimony beyond his examination of the debris for evidence of rodents. Plaintiffs do not respond to Defendants' contention that he does not have qualifications to identify rodent evidence in debris.

This Court agrees that Biery's testimony regarding his failure to find rodent activity in the debris should be excluded. Biery has not shown himself to be qualified to perform such an

investigation, and thus his conclusion that no evidence of rodent activity existed in the debris is unreliable. Thus, Defendants' motion is **GRANTED**.

Further, while Biery's testimony regarding the SEA fire-causation investigation may be admissible, this Court warns that if it is nothing more than "needless presentation of cumulative evidence," considering Keaton likely will provide all necessary information regarding the SEA investigation, this Court will exclude it at trial under Rule 403.

### 8.    Defendants' Motion To Limit the Testimony of Jeff Lindsey

Jeff Lindsey is an electrical engineer who evaluated the vehicle for electrical issues. Defendants argue that since Plaintiffs concede that electrical issues are not relevant to this case, Lindsey's testimony concerning his evaluation is irrelevant, and excludable under Rule 402. Further, they argue Lindsey is not qualified under Rule 702 to opine as to the aerodynamics and design of the vehicle, how the debris got onto the stiffener plate, and whether a rodent was responsible for the accumulation of material on the stiffener plate.

Plaintiffs respond that Lindsey's testimony was not limited to his opinion as to electrical issues, but also included an examination of evidence at the Patrick home, and the physical evidence removed from the fire scene. He also analyzed burn patterns in the fire damaged BMW. Plaintiffs argue that Mr. Lindsey's elimination of the electrical components as the cause of fire support the fire investigative team's focus on the combustion of leafy materials. Further, Lindsey was involved in the acquisition and testing of the exemplar vehicle, and took pictures of the vehicle.

Defendants do not contest that the combustion of leafy material caused the fire; they contest, only, how such material arrived at the fire origin. Thus, any testimony regarding electrical issues is irrelevant, and will be excluded under Rule 402. At this point in time, this

Court will admit testimony regarding burn patters, and physical evidence from the Patricks'

home, so long as Plaintiffs show at trial how this evidence is relevant to a fact at issue under

Rule 402. In addition, pursuant to Rule 702, this Court will exclude any of Lindsey's testimony

regarding vehicle design and how debris got onto the stiffener plate, as such testimony is outside

of Lindsey's field of expertise. Lastly, Lindsey may testify as to the acquisition of the exemplar

vehicle, but only insomuch as such testimony is relevant, and is not cumulative of other

testimony. *See* Fed. R. Evid. 401, 402, 403. Thus, Defendants' motion is **GRANTED** in part,

and **DENIED** in part.

## V. Conclusion

Plaintiffs' motion in limine (1) to exclude evidence regarding the alleged lack of similar

incidents, (Doc. 108), is **DENIED**; (2) to exclude evidence that the Patricks' home was

demolished and rebuilt, (Doc. 110), is **DENIED**; and (3) to exclude expert testimony of Thomas

W. McCloskey, (Doc. 111), is **DENIED**. Defendants' motion in limine: (1) to exclude evidence

of product recalls and traffic safety bulletins, (Doc. 107), is **GRANTED**; (2) to exclude evidence

of subsequent model vehicles, (109), is **DENIED**; (3) to exclude evidence of alleged other

similar incidents, (Doc. 113), is **GRANTED** in part, and **DENIED** in part; (4) to exclude or limit

the testimony of Richard Clarke, (Doc. 119), is **GRANTED** in part, and **DENIED** in part; (5) to

exclude or limit the testimony of Michael Steele, (Doc. 120), is **GRANTED** in part, and

**DENIED** in part; (6) to limit the testimony of Kevin Keaton, (Doc. 121), is **DENIED**; (7) to

exclude the testimony of Nicholas Biery, (Doc. 123), is **GRANTED**; and, (8) to limit the testimony of Jeffrey Lindsey, (Doc. 126), is **GRANTED** in part and **DENIED** in part.

      **IT IS SO ORDERED.**


                                      **/s/ Algenon L. Marbley**
                                **ALGENON L. MARBLEY**
                                **UNITED STATES DISTRICT JUDGE**

**DATED: June 26, 2015**